**MILBANK LLP**
SAMIR L. VORA (SBN 253772)
svora@milbank.com
2029 Century Park East
Los Angeles, CA 90067
Telephone: (424) 386-4316
Facsimile: (213) 629-5063

NEAL K. KATYAL (*pro hac vice*)
nkatyal@milbank.com
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

MATTHEW LAROCHE (*pro hac vice*)
mlaroche@milbank.com
LUCILLE E. BAEURLE (*pro hac vice*)
lbaeurle@milbank.com
ALEXANDER RUPPERT (*pro hac vice*)
aruppert@milbank.com
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (213) 530-5219

*Attorneys for Defendant Quill & Arrow LLP*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

FORD MOTOR COMPANY, a Delaware Corporation,

Plaintiff,

v.

QUILL & ARROW LLP,

Defendant.

Case No. 2:26-CV-06614-DMG-PVC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT QUILL & ARROW LLP'S MOTION TO DISMISS AND MOTION TO STRIKE**

*[Filed concurrently with Notice of Motion and Motion to Dismiss and Motion to Strike; Declaration of Matthew Laroche; Request for Judicial Notice, and [Proposed] Order]*

Hearing Date: October 23, 2026
Time: 9:30 a.m.
Judge: Hon. Dolly M. Gee
Court: 8C
Trial Date: None Set

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

SUMMARY OF ALLEGATIONS ........ 4

LEGAL STANDARD ........ 7

ARGUMENT ........ 8

I. FORD'S COMPLAINT IS BARRED BECAUSE IT IS PREDICATED ON UNDERLYING LITIGATION ACTIVITY ........ 8

A. Ford's Complaint Is Barred by California's Litigation Privilege ........ 8

B. The *Noerr-Pennington* Doctrine Applies to the Complaint ........ 9

C. The Narrow "Sham" Litigation Exception Does Not Apply ........ 11

II. FORD FAILS TO STATE THEFT AND UNFAIR BUSINESS ACT CLAIMS ........ 13

A. Ford Fails to State a Theft Claim under California Penal Code § 496 ........ 14

1. Ford Has Not Alleged an Actionable False Representation ........ 14

2. Ford Has Not Plausibly Alleged Criminal Intent ........ 18

3. Ford Has Not Plausibly Alleged Reliance ........ 20

B. Ford Fails to State a UCL Claim ........ 21

1. Ford Does Not Plead an Unlawful, Unfair, or Fraudulent Business Practice with Particularity ........ 21

2. Ford Lacks Standing Because It Fails to Plausibly Allege Economic Injury or Causation ........ 24

3. Ford Has Adequate Remedies at Law ........ 26

C. Ford's Complaint Underscores the Importance of Rule 9(b) ........ 26

III. FORD'S CLAIMS MUST BE STRICKEN UNDER CALIFORNIA'S ANTI-SLAPP STATUTE ........ 28

A. Ford's Claims Arise from Protected Conduct ........ 28

B. Ford Cannot Show a Likelihood of Prevailing on Its Claims ........ 29

CONCLUSION ........ 30

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*569 E. Cnty. Blvd. LLC v. Backcountry Against the Dump, Inc.*,
6 Cal. App. 5th 426 (2016) ....................29

*Action Apartment Ass'n v. City of Santa Monica*,
41 Cal. 4th 1232 (2007) ....................2, 8, 28

*Anderson v. Ford Motor Co.*,
74 Cal. App. 5th 946 (2022) ....................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................7

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ....................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................3, 7

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
553 F. Supp. 3d 793 (C.D. Cal. 2021) ....................13, 24

*Bigge Crane & Rigging Co. v. Agri-Sys.*,
2026 WL 1257750 (N.D. Cal. May 7, 2026) ....................19

*Blanchard v. DIRECTV, Inc.*,
123 Cal. App. 4th 903 (2004) ....................9

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
727 F.3d 917 (9th Cir. 2013) ....................19

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ....................27

*Bonni v. St. Joseph Health Sys*,
11 Cal. 5th 995 (2021) ....................29

*Borg v. Principal Life Ins. Co.*,
2008 WL 11453724 (N.D. Cal. July 24, 2008) ....................20

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) ....................10

*Campos v. Bank of Am., Inc.*,
2012 WL 2862603 (N.D. Cal. July 11, 2012) ....................................................23

*Carden v. Getzoff*,
190 Cal. App. 3d 907 (1987) ..........................................................................9

*Castillo v. City of Los Angeles*,
92 Cal. App. 4th 477 (2001) ..........................................................................18

*City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991)......................................................................................11

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ............................................................................7

*Contreras v. Dowling*,
5 Cal. App. 5th 394 (2016) ............................................................................10

*Cook v. Harding*,
879 F.3d 1035 (9th Cir. 2018) ...................................................................17, 18

*Core Focus Consulting 2, LLC v. RenewAge Energy Sols., Inc.*,
2024 WL 3403115 (C.D. Cal. July 12, 2024)...............................................13, 16

*Crossroads Invs. L.P. v. Fed. Nat'l Mortg. Ass'n*,
13 Cal. App. 5th 757 (2017) ..........................................................................29

*Cullen v. Netflix, Inc.*,
2013 WL 140103 (N.D. Cal. Jan. 10, 2013)......................................................21

*Dang v. Samsung Elecs. Co.*,
2018 WL 11348883 (N.D. Cal. July 2, 2018) ....................................................22

*David Rovinsky LLC v. Peter Marco, LLC*,
2020 WL 5645792 (C.D. Cal. Sep. 21, 2020) ....................................................15

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ................................................................21, 22, 23

*Day v. GEICO Cas. Co.*,
2024 WL 1244481 (N.D. Cal. Mar. 21, 2024) ....................................................23

*Dean v. Friends of Pine Meadow*,
21 Cal. App. 5th 91 (2018) ..............................................................................9

*DKN Holdings LLC v. Faerber*,
61 Cal. 4th 813 (2015) ....................16

*Doan v. Singh*,
617 F. App'x 684 (9th Cir. 2015) ....................7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................14

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ....................10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ....................7, 15, 19

*Facebook, Inc. v. ConnectU, Inc.*,
2008 WL 8820476 (N.D. Cal. June 25, 2008) ....................20

*Finton Constr., Inc. v. Bidna & Keys, APLC*,
238 Cal. App. 4th 200 (2015) ....................29

*Flickinger v. Finwall*,
85 Cal. App. 5th 822 (2022) ....................8

*Fodor v. Blakey*,
2012 WL 12893985 (C.D. Cal. Feb. 21, 2012) ....................14

*Ford Motor Co. v. Knight L. Grp.*,
2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) ....................1, 11, 13

*Ford Motor Co. v. Mikhov*,
2026 WL 691879 (C.D. Cal. Mar. 10, 2026) ....................1, 10, 12

*Frazier v. Ford Motor Co.*,
No. 22-cv-0464 (C.D. Cal. Jan. 24, 2024) ....................*passim*

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005) ....................10

*Galeotti v. Int'l Union of Operating Engr's Loc. No. 3*,
48 Cal. App. 5th 850 (2020) ....................20

*Grausz v. Hershey Co.*,
691 F. Supp. 3d 1178 (S.D. Cal. 2023) ....................26

*Grouse River Outfitters, Ltd. v. Oracle Corp.*,
848 F. App'x 238 (9th Cir. 2021) ........................................................13

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................................24

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
238 Cal. App. 4th 124 (2015) ........................................................25

*People ex rel. Heryford v. All. Data Sys. Corp.*,
2018 WL 3197856 (E.D. Cal. June 26, 2018) ........................................................8, 27

*Hodson v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ........................................................21, 23

*Home Ins. Co. v. Zurich Ins. Co.*,
96 Cal. App. 4th 17 (2002) ........................................................9

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ........................................................15

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........................................................20

*Janney v. Gen. Mills*,
944 F. Supp. 2d 806 (N.D. Cal. 2013) ........................................................22

*Kanji v. Bank of Am., N.A.*,
2020 WL 8175548 (C.D. Cal. Aug. 25, 2020) ........................................................16

*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638 (9th Cir. 2009) ........................................................10

*Kearns v. Ford Motor Co.*,
2008 WL 474745 (9th Cir. Jan. 16, 2008) ........................................................21

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................*passim*

*Kenne v. Stennis*,
230 Cal. App. 4th 953 (2014) ........................................................2

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056 (9th Cir. 1998) ........................................................11, 12

*Krotin v. Porsche Cars North America, Inc.*,
38 Cal. App. 4th 294 (1995) ....................23

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ....................24

*Line One Laby's Inc. v. Wingpow Int'l Ltd.*,
2023 WL 6812760 (C.D. Cal. Sep. 12, 2023) ....................19

*Litrinium, Inc. v. MACOM Tech. Sols. Inc.*,
2020 WL 4580506 (C.D. Cal. Apr. 27, 2020) ....................30

*Major v. Ocean Spray Cranberries, Inc.*,
2015 WL 859491 (N.D. Cal. Feb. 26, 2015) ....................21

*May v. Google LLC*,
2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) ....................19, 24

*May v. Google LLC*,
2026 WL 788376 (N.D. Cal. Mar. 20, 2026) ....................20, 24

*Mayron v. Google LLC*,
54 Cal. App. 5th 566 (2020) ....................25

*Mir v. Greines, Martin, Stein & Richland*,
2015 WL 12746231 (C.D. Cal. Feb. 19, 2015) ....................12

*Morizur v. Seaworld Parks & Ent., Inc.*,
2020 WL 6044043 (N.D. Cal. Oct. 13, 2020) ....................21

*Moss v. Infinity Ins. Co.*,
197 F. Supp. 3d 1191 (N.D. Cal. 2016) ....................25

*Next Viet. Projects Found., Inc. v. Koster Films, LLC*,
2024 WL 5316363 (C.D. Cal. Sep. 6, 2024) ....................9

*Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP*,
18 Cal. App. 5th 95 (2017) ....................28

*Parducci v. Overland Sols., Inc.*,
399 F. Supp. 3d 969 (N.D. Cal. 2019) ....................27

*People v. DeMontoya*,
85 Cal. App. 5th 1159 (2022) ....................17

*People v. Potter Handy, LLP*,
97 Cal. App. 5th 938 (2023) ....................................................................9

*People v. Williams*,
57 Cal. 4th 776 (2013) ..........................................................................14

*People v. Wooten*,
44 Cal.App.4th 1834 (1996) ....................................................................14

*Portman v. George McDonald L. Corp.*,
99 Cal. App. 3d 988 (1979) .....................................................................9

*Prehired, LLC v. Provins*,
2023 WL 2717509 (E.D. Cal. Mar. 30, 2023)..........................................8

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*,
136 Cal. App. 4th 464 (2006) ..................................................................10

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)....................................................................................11

*Quaid v. Granet*,
2026 WL 1329648 (9th Cir. May 13, 2026)..............................................30

*Ramirez v. McCormack*,
113 Cal. App. 5th 493 (2025) ..................................................................28

*Relevant Grp., LLC v. Nourmand*,
116 F.4th 917 (9th Cir. 2024) ..................................................10, 11, 12

*Reynaga v. Ford Motor Co.*,
No. 22STCV15694 (Cal. Super. Ct. Feb. 18, 2025)...................................*passim*

*River Supply, Inc. v. Oracle Am., Inc.*,
2023 WL 7346397 (N.D. Cal. Nov. 6, 2023) ..........................................16

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024)............................................15

*Rubin v. Green*,
4 Cal. 4th 1187 (1993) ........................................................................8, 28

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) ......................................................................8, 28

*Safe Health Sys., Inc v. Chierchio*,
2024 WL 7094192 (C.D. Cal. Jan. 9, 2024) .......................................................20

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) .......................................................................7, 28

*Schrader Cellars, LLC v. Roach*,
129 F.4th 1115 (9th Cir. 2025) .........................................................................8

*Scognamillo v. Credit Suisse First Bos. LLC*,
2005 WL 2045807 (N.D. Cal. Aug. 25, 2005) ...........................................*passim*

*Silberg v. Anderson*,
50 Cal. 3d 205 (1990) ......................................................................................9

*Silcox v. State Farm Mut. Auto. Ins. Co.*,
2014 WL 7335741 (S.D. Cal. Dec. 22, 2014) ..................................................22

*Siry Inv., L.P. v. Farkhondehpour*,
13 Cal. 5th 333 (2022) .......................................................................18, 19, 20

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...........................................................................25

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ......................................................................10, 11

*Stewart v. Ragland*,
934 F.2d 1033 (9th Cir. 1991) ..........................................................................19

*Teton Glob. Invs. LLC v. LC Inv. 2010, LLC*,
2021 WL 5861565 (S.D. Cal. Aug. 11, 2021)...................................................24

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) ...........................................................................10

*Tu Le v. Prestige Cmty. Credit Union*,
2023 WL 9689133 (C.D. Cal. Nov. 6, 2023) ....................................................26

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965).........................................................................................10

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ...........................................................................7

*Von Koenig v. Snapple Beverage Corp.*,
2011 WL 43577 (E.D. Cal. Jan. 6, 2011) ........................................................22

*Wilson v. Cable News Network, Inc.*,
7 Cal. 5th 871 (2019) ........................................................................................29

*Xsolla (USA), Inc. v. Aghanim Inc.*,
2024 WL 4139615 (C.D. Cal. Sep. 10, 2024) ..................................................24

**Statutes**

Business and Professions Code §§ 6068, 6125, 6126, 6128, and 6400..................22

Cal. Bus. & Prof. Code § 17204 ............................................................................24

Cal. Bus. & Prof. Code § 17208 ............................................................................26

Cal. Civ. Code § 47(b) ........................................................................................2, 8

Cal. Civ. Code § 1794(d) ........................................................................1, 4, 12, 18

Cal. Civ. Proc. Code § 338(d)................................................................................26

Cal. Civ. Proc. Code § 425.16 ...................................................................3, 28, 29

Cal. Corp. Code §§ 16102, 16305..........................................................................19

Cal. Penal Code § 484............................................................................................14

Cal. Penal Code § 496.......................................................................................*passim*

Civil Code § 1770 ...................................................................................................22

Penal Code § 118 ....................................................................................................22

## PRELIMINARY STATEMENT

This lawsuit is Ford's latest attempt to chill one of its litigation adversaries—a law firm that represents consumers harmed by Ford's defective vehicles. As alleged in the Complaint, for years, Defendant Quill & Arrow LLP ("Quill") has been protecting consumers by bringing successful claims against Ford under California's "Lemon Law," the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"). And because the Song-Beverly Act confers an award of attorneys' fees to prevailing consumers, Quill has litigated numerous fee petitions against Ford. *See* Compl. ¶¶ 37-38; Cal. Civ. Code § 1794(d). Ford presented the same arguments in opposition to those fee petitions that it seeks to relitigate here, and the trial courts reviewed them already. Against that record, Ford resorts to hyperbolic allegations of criminal theft and unfair business practices in collateral litigation about Lemon Law cases it chose to settle and did not win.

This is now the second time in as many years that Ford has targeted its Lemon Law adversaries in this way, and this iteration is as deficient as the first. This Court already twice dismissed Ford's substantially similar suit alleging that another California Lemon Law firm was filing inflated fee petitions. *Ford Motor Co. v. Knight L. Grp.*, 2025 WL 3306280, at *1 (C.D. Cal. Nov. 24, 2025); *Ford Motor Co. v. Mikhov*, 2026 WL 691879, at *12-13 (C.D. Cal. Mar. 10, 2026) (dismissing with prejudice). As those decisions explained, the most fundamental problem with Ford's Complaint—as held in a series of Supreme Court and Ninth Circuit cases—is that the allegedly wrongful acts identified in the Complaint constitute "petitioning activity" (*i.e.*, litigation activity) protected by the First Amendment and the *Noerr-Pennington* doctrine. *Noerr-Pennington* recognizes a party's right to litigate in court without fear of reprisal and requires dismissal of claims predicated on underlying litigation activity to avoid chilling the exercise of that right.

*Noerr-Pennington* bars this action in its entirety, as it is premised solely on Quill's litigation conduct against Ford, and the Complaint does not plausibly allege that the narrow "sham litigation" exception to *Noerr-Pennington* applies. And because Ford brought state law claims in this case (instead of the federal racketeering claims asserted in *Mikhov*),

California's litigation privilege also bars this action. *See* Cal. Civ. Code § 47(b). That privilege provides absolute immunity from claims based on litigation activity, it "bars all tort causes of action except a claim of malicious prosecution," and it has been applied in "numerous cases"—even those involving allegations of fraud during litigation. *See, e.g.*, *Kenne v. Stennis*, 230 Cal. App. 4th 953, 965 (2014).

*Noerr-Pennington* and California's litigation privilege are designed to prevent retaliatory actions exactly like this one. As the Supreme Court of California put it, the purpose of the litigation privilege is to provide litigants "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions" and it places the "burden of exposing" alleged misconduct on the litigants in the underlying action "thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1241, 1244 (2007) (citation omitted). This purpose applies with force here because Ford has been making similar accusations about Quill's business practices and fee petitions in underlying Lemon Law litigations dating back to 2023. *See infra* at 16-18.

Ford's claims also fail on their face for multiple additional reasons.

*First*, as to both claims, Ford does not allege the criminal theft of attorneys' fees (Claim One) or unfair business practices (Claim Two) with the particularity required by Rule 9(b). The Complaint is filled with conclusory allegations of fraudulent schemes involving Quill's client strategy and fee petitions, but Ford never identifies a specific instance in which any of this occurred. For example, the Complaint alleges that Quill's client intake process involved deceptive advertising and withholding information from clients. Yet, Ford does not identify a single advertisement, when it was published, or what it said. Nor does it identify a single client who was told anything by Quill, let alone what was said, by whom, and when.

As to fee petitions, Ford alleges that it relied on Quill's "fee demands" to settle cases, but Ford never identifies a single settlement or any misrepresentation made in connection

with a settlement, who made it, or when. The closest Ford comes to particularized allegations is when it identifies the fee petitions filed in three matters: the *Camacho*, *Reynaga*, and *Frazier* cases. But Ford's allegations, at best, are that attorneys recorded too much time for certain tasks, not that they did not actually complete those tasks. That issue was already presented to, and decided by, the underlying trial courts. Thus, those allegations are barred by issue preclusion too.

*Second*, Ford's theft claim fails for the additional reasons that the Complaint does not plausibly allege criminal intent or reliance by Ford. The Complaint includes no plausible allegations that Quill or any of its partners intended to commit criminal theft when Quill litigated and won Lemon Law cases against Ford. Ford also cannot seriously contend that it made settlement decisions relying on Quill's fee demands when it has been arguing for years that it believes Quill's fee requests were inflated.

*Finally*, the unfair business practices claim also fails because Ford did not plausibly allege an economic injury as a result of Quill's conduct and Ford has adequate remedies at law such as litigating these issues in the underlying Lemon Law litigations.

For these reasons, as detailed below, the Court should dismiss this ill-conceived lawsuit with prejudice. The Court should also grant Quill's anti-SLAPP motion to strike, which mandates early dismissal of claims based on litigation conduct. Cal. Civ. Proc. Code § 425.16. Indeed, Ford continues to resort to collateral litigation against its litigation adversaries when it is displeased by its own strategic decisions and what courts decided in underlying Lemon Law cases. Allowing this claim to proceed would come at the serious cost of further harming Quill's reputation and chilling consumers and law firms from bringing legitimate claims against Ford. It also risks embarking on discovery across hundreds of cases going back years, which likely would require extensive litigation and raise severe attorney-client privilege issues. Courts require much more than the allegations Ford has offered "before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007) (citation omitted).

## SUMMARY OF ALLEGATIONS

### A. Ford's Complaint Is Premised on Lemon Law Litigation that It Lost or Settled

According to the Complaint, Quill committed theft and engaged in unfair business practices by representing prevailing consumers in underlying Lemon Law litigation against Ford, and by recovering contingency and attorneys' fees that Ford agreed to pay through settlements or that courts awarded. Compl. ¶¶ 16-17. The Complaint alleges that, since 2021, Quill has filed numerous Lemon Law cases against Ford. The Complaint does not allege that those cases were meritless or that Ford's vehicles were not defective. To the contrary, it is predicated solely on Lemon Law cases that Ford settled and did not win.

Under the Lemon Law, only prevailing consumers are entitled to recover attorneys' fees. Compl. ¶ 11; Cal. Civ. Code §1794(d). Ford's complaint alleges that, pursuant to that statute, Quill has filed over a hundred fee petitions on behalf of prevailing consumers and obtained fee awards from Ford totaling millions of dollars resulting, in part, from "inflated" fee petitions. Compl. ¶¶ 37-38, 67; Exs. C, E.

### B. Ford's Allegations Are Conclusory

The Complaint alleges that Quill used "fraudulent and unlawful strategies" to maximize contingency and attorney fee awards in Lemon Law litigations, but never particularizes those allegations or connects them to cases against Ford. Compl. ¶ 17. This allegedly occurred through Quill's (i) client intake and case filing process and (ii) attorney fee petitions—the alleged "front end" and "back end" schemes. *Id.* ¶¶ 19-47. As set forth below, Ford identifies no case or client impacted by that purported process, and only three cases with purportedly inflated fee petitions—in each of which Ford already litigated the reasonableness of Quill's fees.

#### 1. Ford Fails to Particularize Its Allegations About the Client Intake and Case Filing Process

Ford characterizes Quill's intake and case filing process as "fraudulent and unlawful," but never explains why this is so. The gist of Ford's allegations is that Quill's

process promotes litigation and avoids pre-suit resolution when clients are harmed by Ford's defective vehicles. Ford claims this is contrary to "what the Lemon Law is designed to achieve" and "the policy of the Lemon Law." Compl. ¶¶ 17, 19. Ford's disagreement with how Quill purportedly advises its clients is not "fraud."

Regardless, Ford never particularizes these allegations. Ford alleges that Quill recruits clients through "deceptive advertising," but never identifies any advertisement or what was deceptive about it. Compl. ¶ 17. Ford alleges that in "most cases," Quill sends Ford a letter that fails to "explicitly request repurchase," but identifies no such letter or what it said. *Id.* ¶ 17. Ford alleges that Quill instructs "thousands of clients" to read a script to Ford and other automakers and send emails avoiding a repurchase request, but identifies no consumer who did this, when, or what was said. *Id.* ¶ 17. Ford alleges that Quill "falsely promises" clients better compensation if Quill represents them and withholds other compensation options, but never identifies a client who was so advised, what was said, by whom, or when. *Id.* ¶ 20. And Ford alleges that Quill files cases without clients' knowledge or consent, but again identifies no such case. *Id.* ¶¶ 3, 17.

Many of these allegations are remarkable in that they purport to recount attorney-client communications—what Quill allegedly told or instructed its clients to do. Yet Ford provides no basis for them and identifies no client who was told anything by Quill.

**2. Ford Fails to Particularize Its Allegations About Fee Petitions**

The Complaint alleges that Quill's billing department takes time recorded by overseas virtual assistants and domestic non-attorney staff and reallocates those tasks to attorneys.[1] Compl. ¶¶ 4, 15, 27-32. As purported evidence, Ford alleges "[u]pon information and belief" that "generally" the first client communication is with a non-attorney, yet Quill includes a fee entry for co-founding partner Kevin Jacobson for "Initial Communication with client regarding case." *Id.* ¶¶ 29-30. Ford does not allege that Mr. Jacobson does not actually have an "initial communication" with clients. Ford otherwise

[1] Ford alleges that non-attorney time is billed as attorney time at rates up to $950 per hour (Compl. ¶ 4) but does not identify a single time entry that was billed at $950 per hour.

alleges, without identifying any specific time entries, that non-attorneys perform billable tasks "filed and served without any attorney review" and billed as attorney time. Compl. ¶¶ 14-15, 26-32.

The Complaint also alleges that Ford relied on Quill's "fee demands" in making settlement decisions, but Ford does not identify a single settlement or allege that Quill provided Ford with purportedly false time entries in connection with those demands. *Id.* ¶¶ 38-39. When settlements were rejected, Quill would file a fee petition in the underlying Lemon Law litigation. The Complaint alleges that Ford had "no ability . . . to suspect that Quill" was allegedly "passing off work" performed by non-attorneys in its fee petitions, even though Ford accused Quill of doing exactly that several years ago in a court filing opposing one of Quill's fee petitions. *Id.* ¶ 39; Ex. 4, at 2 (Opp. to Plaintiff's Mot. for Attorneys' Fees and Costs, *Tejada v. Ford Motor Co.*, No. 21STCV26542 (Cal. Super. Ct. Oct. 30. 2023) ("The only way a firm of [Quill's] size could handle that many matters simultaneously is to devote as little time as possible to each case by . . . relying on an army of paralegals and/or artificial intelligence bots to generate paper *en masse*.").[2]

Despite claiming to review 169 fee petitions, the Complaint identifies only three petitions with purportedly inflated fees (*Camacho*, *Reynaga*, and *Frazier*). Compl. ¶¶ 42-44, 49. The allegations about those petitions are inconsistent with Ford's claim that attorneys did not work the time reflected in Quill's fee petitions. Specifically, Ford claims that Quill reduced the amount of "lawyer time" for certain tasks in *Camacho* (such as drafting a complaint and discovery requests), which shows that the amount of time associated with those same tasks in *Reynaga* and *Frazier* was "inflated," not that lawyers did not actually perform the tasks. *Id.* ¶¶ 43-44.

Ford's allegation does not follow: no two cases are identical, and the entries Ford compares were recorded by different timekeepers at different times. Ford provides no allegations supporting why the *Camacho* figures are the correct baseline for other cases. It simply claims, in conclusory fashion, that the time for those tasks in *Reynaga* and *Frazier*

[2] "Ex." refers to the Exhibits to the accompanying Declaration of Matthew Laroche.

was "overstated." *Id.* ¶¶ 43-44. Moreover, in each of these cases, Ford litigated the specific issue it seeks to relitigate here—whether Quill attorneys actually worked the time reflected in its fee petitions. *See infra* at 16-18.

## LEGAL STANDARD

Dismissal is appropriate if the complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court must only "accept as true all factual allegations in the complaint." *Doan v. Singh*, 617 F. App'x 684, 685 (9th Cir. 2015). The "court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Where claims sound in fraud, as Ford's do here, they are subject to the heightened pleading standard of Rule 9(b), which requires particularized allegations about the "'who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014).

To succeed on an anti-SLAPP motion to strike, a defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (citation omitted). Once a defendant makes that showing, the plaintiff must demonstrate "a reasonable probability [of] . . . prevail[ing]" on the claims in question. *Id.* An anti-SLAPP motion based on a complaint's facial legal deficiencies is "treated in the same manner as a motion under Rule 12(b)(6)." *Prehired, LLC v. Provins*, 2023 WL 2717509 at *3 (E.D. Cal. Mar. 30, 2023).

## ARGUMENT

### I. FORD'S COMPLAINT IS BARRED BECAUSE IT IS PREDICATED ON UNDERLYING LITIGATION ACTIVITY

Ford's action—which is predicated on Quill's filing of successful Lemon Law litigation against Ford—is barred by California's litigation privilege and the *Noerr-Pennington* doctrine. These doctrines provide immunity from claims predicated on judicial branch petitioning activity. Indeed, these doctrines provide Ford with the same protection as it hurls falsities at Quill in the Complaint.

California's litigation privilege provides "absolute" immunity from state law tort claims and provides no exception for allegations of fraud or unlawful conduct. While the *Noerr-Pennington* doctrine has a narrow sham exception, Ford does not plausibly allege that it applies here. Ford sold defective vehicles to consumers; the consumers prevailed in the underlying litigation against Ford; Quill litigated, won, or settled the cases at issue; the prevailing consumers had a statutory right to recover attorneys' fees; and Ford agreed to pay those fees through settlements or courts ordered them to do so.

#### A. Ford's Complaint Is Barred by California's Litigation Privilege

The Complaint is barred by California's "broad" litigation privilege, which protects any "publication or broadcast" made as part of a "judicial proceeding." *Action Apartment Ass'n*, 41 Cal. 4th at 1241 (quoting Cal. Civ. Code § 47(b)). "This privilege is absolute in nature." *Id.* It applies to all communications by litigants or their counsel with "some connection or logical relation to the action." *Flickinger v. Finwall*, 85 Cal. App. 5th 822, 840 (2022). It also applies to *all* communicative acts and "noncommunicative acts that are necessarily related to the communicative conduct," made in connection with pending or anticipated litigation. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1065 (2006).

So long as a communication has some logical connection to pending or anticipated litigation, and is made to achieve the objects of the litigation, the communication is privileged. *Rubin v. Green*, 4 Cal. 4th 1187, 1194-95 (1993); *Schrader Cellars, LLC v. Roach*, 129 F.4th 1115, 1126 (9th Cir. 2025). Applying labels such as "fraudulent" and "unlawful" to the alleged conduct, as Ford repeatedly does here, does not circumvent the

litigation privilege. *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 921 (2004) (applying privilege even though communications were allegedly "fraudulent, perjurious, unethical, or even illegal" (citation modified)). Rather, the privilege applies regardless of "motives, morals, ethics or intent," and with equal force to both true and false communications. *Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 107 (2018).

California's litigation privilege plainly applies to the Complaint. Every single allegation in the Complaint is based on Quill's litigation-related conduct. The Complaint alleges that Quill, among other things, recruited clients to bring litigation against Ford; caused clients to send demand letters and emails intended to generate Lemon Law claims; filed complaints; engaged in discovery; made fee demands; settled cases; and filed fee petitions seeking attorneys' fees. *See, e.g.*, Compl. ¶¶ 20-24.

Courts have repeatedly held that the California litigation privilege bars claims just like those asserted here. *See, e.g.*, *People v. Potter Handy, LLP*, 97 Cal. App. 5th 938, 948 (2023) (California Unfair Competition Law ("UCL") claim "within the broad reach of the privilege" because the claim was premised on law firm's alleged use of litigation to coerce settlements); *Next Viet. Projects Found., Inc. v. Koster Films, LLC*, 2024 WL 5316363, at *4 (C.D. Cal. Sep. 6, 2024) (dismissing Cal. Penal Code Section 496 claim under litigation privilege); *Silberg v. Anderson*, 50 Cal. 3d 205, 218 (1990) (collecting "numerous cases in which fraudulent communications or perjured testimony have nevertheless been held privileged"); *Carden v. Getzoff*, 190 Cal. App. 3d 907, 915 (1987) (affirming dismissal of action premised on perjurious statements under litigation privilege); *Portman v. George McDonald L. Corp.*, 99 Cal. App. 3d 988, 990 (1979) (similar); *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 20, 24-26 (2002) (similar); *Contreras v. Dowling*, 5 Cal. App. 5th 394, 416 (2016) (similar).

### B. The *Noerr-Pennington* Doctrine Applies to the Complaint

The *Noerr-Pennington* doctrine independently requires dismissal, as the Court held in *Mikhov* in nearly identical circumstances. Under the *Noerr-Pennington* doctrine, persons who petition any branch of government for redress, including the judicial branch,

are "generally immune from statutory liability for their petitioning conduct." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 927 (9th Cir. 2024); *E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). As to litigation activity, "the doctrine 'overprotects baseless petitions so as to ensure citizens enjoy the right of access to the courts without fear of prosecution.'" *Relevant Grp.*, 116 F.4th at 927-28 (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006)).

This broad immunity prevents disgruntled litigants like Ford from re-litigating cases they lost or willingly settled. The *Noerr-Pennington* doctrine also bars state law claims, like the present ones, predicated on underlying litigation activity. *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 136 Cal. App. 4th 464, 478 (2006) (emphasizing *Noerr-Pennington* doctrine applies to "virtually any tort, including unfair competition" (citation omitted)). And it bars claims against parties in the underlying litigation and their lawyers. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1186 (9th Cir. 2005).

*Noerr-Pennington* immunity bars Ford's lawsuit. Ford's claims burden First Amendment petitioning activity. *See Mikhov*, 2026 WL 691879, at *8-9; *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). As noted above, Ford's entire Complaint is premised on Quill's use of "the channels and procedures of state and federal . . . courts to advocate [their clients'] causes and points of view"—activity protected by the *Noerr-Pennington* doctrine. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009) (discovery communications and trial advocacy protected by *Noerr-Pennington*); *Knight L. Grp.*, 2025 WL 3306280, at *7-8, *13-16 (dismissing on *Noerr-Pennington* grounds where activities were premised, in part, on settlements).

Ford alleges that some of Quill's conduct, such as purportedly telling clients to say certain things to Ford, occurred before litigation was filed. Compl. ¶¶ 20-24. But pre-litigation conduct, too, is protected by *Noerr-Pennington*. *Sosa*, 437 F.3d at 923. Regardless, the conduct about which Ford complains is not actionable unless connected to

a litigated case or settlement. *See Knight L. Grp.*, 2025 WL 3306280, at *8 (rejecting similar argument based on claims premised on a "fraudulent billing scheme").

California's theft and UCL statutes also do not unambiguously reach the submission of inflated fee petitions and, therefore, must be construed "to avoid burdening protected petitioning activity." *Id.* at *12 (concluding the same with respect to mail and wire fraud statutes). In fact, the Ninth Circuit has held that defendants are not liable for state law claims similar to those asserted here where liability is based on protected petitioning conduct. *Theme Promotions, Inc.*, 546 F.3d at 1007-08 ("the Noerr-Pennington doctrine applies to [plaintiff's] state law tortious interference with prospective economic advantage claims" and "bars [plaintiff's] intentional interference claims"); *see also Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1153 (S.D. Cal. 2020) (similar).

### C. The Narrow "Sham" Litigation Exception Does Not Apply

The broad *Noerr-Pennington* immunity provided to litigation activity is subject only to a "narrow 'sham litigation' exception." *Sosa*, 437 F.3d at 932 n.6. For that exception to apply, the plaintiff attacking the underlying litigation must include allegations sufficient to show that the underlying litigation was a "sham." *Id.*; *see also Relevant Grp.*, 116 F.4th at 928; *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1062-63 (9th Cir. 1998). Recognizing this, Ford's Complaint describes Quill's fee petitions as "shams." Compl. ¶¶ 33, 35, 52. Unilaterally labeling something a "sham" does not make it so.

"A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all, not one who genuinely seeks to achieve his governmental result, but does so *through improper means*." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (citation modified). Ford does not, and cannot, allege that Quill and its clients were uninterested in favorable judicial action in the underlying litigation. And although Ford alleges that Quill improperly encouraged its clients to litigate, it does not (and cannot) allege that the underlying litigations were "objectively baseless." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993). To the contrary, Ford alleges that Quill's clients ***prevailed*** in the

underlying litigations against Ford and Ford agreed to settle them, and courts ordered Ford, over Ford's objections, to pay their attorneys' fees. "[A] winning lawsuit 'is by definition not a sham.'" *Relevant Grp.*, 116 F.4th at 932 (citation modified); *Kottle*, 146 F.3d at 1063.

The sham exception also is not triggered by allegations of misrepresentations in fee petitions. Compl. ¶¶ 33-36. A plaintiff can only "overcome a 12(b)(6) motion if his allegations demonstrate" that the defendant "so misrepresented the truth" in the lawsuit that "the ***entire*** . . . ***proceeding was deprived of its legitimacy***." *Kottle*, 146 F.3d at 1063 (emphasis added). Recognizing that it cannot argue with a straight face that the Lemon Law lawsuits as a whole were deprived of legitimacy, the Complaint attempts to plead around this fatal problem by arguing—rather than alleging facts—that the fee petitions are "separate and distinct proceedings" from the Lemon Law cases in which they were filed. Compl. ¶ 52. This is legally incorrect, as the Court already held in *Mikhov*.

Under the Lemon Law, "the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended . . . determined by a court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). A Lemon Law fee petition is filed in the same Lemon Law case, involving the same named parties, before the same judge, with the same case number, and recorded on the same docket. *See, e.g.*, Ex. 2C *Frazier* Dkt. Nos. 33 (Quill's motion for fees), 34 (Ford's opposition), 35 (Quill's reply), 36 (Court's order on fees); Ex. 3C (*Reynaga* Dkt.); Ex. 1C (*Camacho* Dkt.). Because the fee petitions were part of the Lemon Law cases in which they were filed and the purported misrepresentations did not deprive those entire cases of legitimacy, the sham litigation exception does not apply. *See Mikhov*, 2026 WL 691879, at *10 (rejecting identical claim that the fee petition process under the Song-Beverly Act was "a proceeding distinct from the larger case"); *Mir v.*

*Greines, Martin, Stein & Richland*, 2015 WL 12746231, at *7 (C.D. Cal. Feb. 19, 2015), *aff'd*, 676 F. App'x 699 (9th Cir. 2017).

Even if Ford legitimately could divorce the fee petitions from the very Lemon Law cases in which they were filed, the Complaint fails to allege that Quill lacked any entitlement to fees in the relevant Lemon Law cases. The Complaint does not allege, for example, that Quill somehow won all those cases for all those clients without doing any work at all. Even accepting as true that some of Quill's purported work should have been billed to non-attorneys or was inflated, "that misrepresentation is not sufficient on its own to deprive the entire fee petition process—let alone the entire lawsuit—of legitimacy." *Knight L. Grp.*, 2025 WL 3306280, at *11.

* * *

In sum, California's litigation privilege and the *Noerr-Pennington* doctrine serve a critical purpose in allowing litigants to advocate without fear of collateral suit attacking their conduct, and they bar this action. Indeed, even Ford's attorneys are protected for positions they took defending Ford in Lemon Law cases, which could be characterized as "fraudulent" when they argued Ford's cars were not defective. *See, e.g.*, *Anderson v. Ford Motor Co.*, 74 Cal. App. 5th 946, 973 (2022) (Ford "engaged in a pattern or practice of deceitful misconduct" against consumers who brought Lemon Law claims). These protections ensure that litigation conduct does not give rise to tit-for-tat reprisals.

## II. FORD FAILS TO STATE THEFT AND UNFAIR BUSINESS ACT CLAIMS

Beyond the threshold privilege and immunity bars, Ford fails to plausibly allege claims for theft or unfair business practices. Because both claims sound in fraud, they must satisfy Rule 9(b)'s heightened pleading requirements. *See Core Focus Consulting 2, LLC v. RenewAge Energy Sols., Inc.*, 2024 WL 3403115, at *3 (C.D. Cal. July 12, 2024) ("[C]ourts within this district routinely apply Rule 9(b) to . . . claims under Section 496."); *BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 801 (C.D. Cal. 2021)

(applying Rule 9(b) to UCL claim grounded in fraud). The Complaint does not meet this standard.

### A. Ford Fails to State a Theft Claim under California Penal Code § 496

Section 496 requires Ford to plead that Quill obtained attorneys' fees "in a manner constituting theft." *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 242 (9th Cir. 2021). Because Ford ostensibly proceeds on a theft-by-false-pretenses theory, it must allege: "(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation." *People v. Williams*, 57 Cal. 4th 776, 787 (2013) (quoting *People v. Wooten*, 44 Cal. App. 4th 1834, 1842 (1996)).[3] The Complaint fails at each step.

#### 1. Ford Has Not Alleged an Actionable False Representation

Ford alleges that Quill fraudulently obtained attorneys' fees in two ways, through settlements and court awards following the fee petition process. Compl. ¶ 34. The Complaint primarily opts for bluster concerning Quill's allegedly fraudulent acts, which is inadequate. *Kearns*, 567 F.3d at 1125 ("Any averments which do not meet [Rule 9(b)] should be 'disregarded' or 'stripped' from the claim[.]"). When the hyperbole is set aside, and the factual allegations are analyzed under the requirements of Rule 9(b), the Complaint comes up short.

##### a. Ford Has Not Alleged a False Representation with Particularity

The Complaint's allegations about settlements are fatally defective because Ford never identifies a single settlement, let alone any misrepresentation made in connection with one. This plainly fails to satisfy Rule 9(b), which requires Ford to allege the time, place, and specific content of any purported false representations, as well as who made it and why it was false. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1088-89

[3] Ford includes no allegations that Quill feloniously took property from Ford without consent, which is required to meet the other definitions of theft. Cal. Penal Code § 484.

(N.D. Cal. 2023) (dismissing Section 496 claim where "[p]laintiffs have not clearly identified the specific representations that [defendant] made to them that support their larceny claim"); *Fodor v. Blakey*, 2012 WL 12893985, at *5, *13 (C.D. Cal. Feb. 21, 2012) (same). Indeed, Ford does not even allege that Quill provided Ford with fee invoices with purportedly misstated time entries when it made fee demands that led to settlements. Compl. ¶¶ 34, 38, 51.

The Complaint's allegations about filed fee petitions are likewise deficient. Ford alleges that Quill reallocated time from non-attorneys to attorneys in hundreds of fee petitions but never identifies a specific entry in which this occurred. The three fee petitions Ford identifies and the accompanying exhibits do not solve this problem. Ford alleges that Quill reduced "lawyer time" for certain tasks in *Camacho* compared to other fee petitions (such as drafting a complaint and discovery requests), purportedly showing that the time for those same tasks in *Reynaga* and *Frazier* was "inflated." Myriad reasons unrelated to fraud could explain why the *Camacho* entries differ from the *Reynaga* and *Frazier* entries. Ford needed much more factual specificity to plausibly allege that this conduct amounts to fraud. *Eclectic Props.*, 751 F.3d at 998-99 (allegations not plausible where facts are "consistent with both their theory of liability and [an] innocent alternative"); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (same).

Putting that aside, the Complaint does not allege that the entries from those cases reflect work done by non-lawyers: it alleges only that the work is "overstated." Compl. ¶¶ 44-47. Instead, Ford resorts to conclusory allegations that an unspecified "substantial portion" of the billed work in those three cases "w[as] actually performed by non-lawyers." *Id*. But it identifies no entry that was "actually" performed by a non-lawyer, no non-lawyer who performed it, and no attorney to whom the work was falsely attributed. *See* Compl. Exs. A, B, C. That omission is especially stark because Ford claims to have reviewed 169 fee applications and estimates that at least 50% of the fees were fraudulently obtained.

Compl. ¶¶ 48-49. Conclusory allegations do not satisfy Rule 9(b)—much more specificity is required.

In similar circumstances, courts routinely dismiss theft claims at the pleading stage. *See, e.g.*, *David Rovinsky LLC v. Peter Marco, LLC*, 2020 WL 5645792, at *7-8 (C.D. Cal. Sep. 21, 2020) (dismissing Section 496 claim where "the time, place, and specific content of the[] purported misrepresentations is not pleaded with any specificity"); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *7 (C.D. Cal. June 5, 2024) (dismissing Section 496 claim where plaintiffs did not identify "any of the 'specific representations that [defendant] made to them that support their larceny claim'" (citation omitted)); *Kanji v. Bank of Am., N.A.*, 2020 WL 8175548, at *7-8 (C.D. Cal. Aug. 25, 2020) (similar); *Core Focus Consulting*, 2024 WL 3403115, at *4 (similar); *River Supply, Inc. v. Oracle Am., Inc.*, 2023 WL 7346397, at *17 (N.D. Cal. Nov. 6, 2023) (similar).

**b. Ford's Claim Is Barred by the Doctrine of Issue Preclusion**

Even if Ford stated a false representation with particularity in *Camacho*, *Reynaga* and *Frazier* (it did not), those petitions cannot serve as the basis for a theft claim because they are barred by the doctrine of issue preclusion. In each case, Ford litigated the same issue at stake in its theft claim—whether Quill attorneys actually worked the time reflected in those fee petitions.

Issue preclusion bars Ford from relitigating alleged overbilling. Issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 825 (2015). Ford cites only three cases in the Complaint, and in each Ford was ordered to pay attorneys' fees. *See* Ex. 2B (Order Granting in Part and Denying in Part Plaintiff's Motion for Attorneys' Fees, *Frazier v. Ford Motor Co.*, No. 22-cv-0464 (C.D. Cal. Jan. 24, 2024)), Dkt. No. 36; Ex. 3B (Hearing on Motion for Attorney Fees, *Reynaga v. Ford Motor Co.*, No. 22STCV15694 (Cal. Super. Ct. Feb. 18, 2025)); Ex. 1B (Judgment Re: Order Granting Motion for Attorney's Fees, Costs, and Expenses, *Camacho v. Ford Motor Company*, No.

37-2023-00009725-CU-BC-CTL (Cal. Super. Ct. Feb. 18, 2026)). The first and fourth elements are thus met. So are the second and third.

***Identical Issues***. The issue presented here—whether Quill's attorneys worked the hours reflected in the invoices supporting its fee petitions—is identical to an issue that was litigated in the underlying proceeding. Indeed, the Complaint acknowledges that courts addressed that issue before granting fee petitions. Compl. ¶ 12 ("The fee applicant has the burden of showing that its requested fees are reasonable by submitting billing records reflecting the actual time spent by identified timekeepers on identified tasks.").

Ford alleges that Quill's "fee application process was predicated entirely on fraudulent and fabricated billing records." Compl. ¶ 51. That is a rehashed argument: In its oppositions to the underlying fee petitions, Ford challenged Quill's billing entries as excessive, duplicative, and not reflective of time actually worked. *See* Ex. 3A at 8 (Ford's Opp., *Reynaga*) ("Plaintiff's counsel and his staff churned the case with eight attorneys who overbilled for even the most menial tasks using boilerplate templates."); *id.* at 18 ("The amount of work that Plaintiff's Fee Motion attributes to many tasks that [sic] reflect not the actual time spent."); Ex. 1A at 11 (Ford's Opp., *Camacho*) ("The amount of work that Plaintiff's Fee Motion attributes to many tasks reflects what counsel believes the 'value' of that task should be, not the actual time spent."); Ex. 2A at 10 (Ford's Opp., *Frazier*) (similar).

It is immaterial whether the Complaint alleges instances or methods of overbilling that were not alleged in the underlying fee petitions. "An issue decided in a prior proceeding establishes collateral estoppel even if some factual matters or legal theories that could have been presented with respect to that issue were not presented." *People v. DeMontoya*, 85 Cal. App. 5th 1159, 1181 (2022) (citation omitted). That Ford chose not to raise the "bots and paralegals" theory in *Camacho*, *Reynaga* and *Frazier* makes no difference, especially because it has used that theory to unsuccessfully oppose other fee petitions since at least 2023. *See* Ex. 4 at 1 (Ford Opp., *Tejada*) (arguing that "Quill's claimed hours here are not just improbable; they are impossible"); *id.* at 2 (alleging that

"(1) Quill's billings records are grossly over-inflated, or (2) Quill's billing records are . . . outright fabrications"); *id.* (arguing that Quill "recycl[es] the same templated complaints . . . discovery . . . [and] correspondence" in every case and "rel[ies] on an army of paralegals and/or artificial intelligence bots to generate paper en masse").

***"Necessarily decided" and "actually litigated."*** This issue was both "necessarily decided" and "actually litigated." Those two requirements are "interrelated." *Cook v. Harding*, 879 F.3d 1035, 1042 (9th Cir. 2018). If "an issue was necessarily decided in a prior proceeding, it was also actually litigated." *Id.*

California courts interpret the "necessarily decided" prong to require "'only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding.'" *Id.* (citation omitted). And it is presumed that courts comply with the applicable statutory framework. *See, e.g., Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 482 (2001). The Song-Beverly Act authorizes payment of "costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). Thus, by awarding fees, the underlying courts necessarily decided that Quill actually worked the hours reflected in its invoices.

* * *

As a result, issue preclusion also bars Ford's claims predicated on these three cases. Having lost its arguments in the underlying courts, Ford cannot now relitigate them in a collateral federal action that is devoid of the facts and context considered by those courts. Allowing Ford to proceed in this manner would undo the finality of the state-court judgments and allow litigants like Ford to take a second bite at the apple in a new federal action any time they are dissatisfied with an unfavorable decision.

**2. Ford Has Not Plausibly Alleged Criminal Intent**

Ford's theft claim also fails because the Complaint does not plausibly allege criminal intent. Though intent can be pleaded generally, this requirement still demands more than conclusory allegations of wrongdoing. This ensures that ordinary commercial disputes are

not "transformed into a theft" "with mere proof of nonperformance or actual falsity." *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361-62 (2022) (citation omitted). Indeed, *Siry* warned against Section 496 being used, as it is here, to transform claims based on "warranty laws such as the Song-Beverly Consumer Warranty Act" "into a 'theft' case seeking treble damages." *Id.* at 370 (Groban, J., concurring).

Ford does not satisfy the intent requirement by claiming in conclusory fashion that "Quill acted with the intent to deprive Ford of its property." Compl. ¶ 56; *see Bigge Crane & Rigging Co. v. Agri-Sys.*, 2026 WL 1257750, at *6 (N.D. Cal. May 7, 2026) (conclusory allegations that a defendant "acted with willful and conscious disregard of the rights of others, fraudulently and with malice," did not establish criminal intent); *May v. Google LLC*, 2024 WL 4681604, at *15 (N.D. Cal. Nov. 4, 2024) (similar). Nor does the Complaint include plausible allegations that any Quill partner had fraudulent intent that could be imputed to the firm itself. Cal. Corp. Code §§ 16102, 16305; *see also Stewart v. Ragland*, 934 F.2d 1033, 1046 n.20 (9th Cir. 1991).

The Complaint is replete with conclusory allegations of fraud but rarely mentions any Quill attorney. Ford's one-line allegation that partner Jonathan Shirian oversaw Quill's billing department does not plausibly allege criminal intent. Compl. ¶ 15. It does not allege, for example, that Mr. Shirian participated in any wrongful conduct or even knew about it. *Cf. Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (conclusory allegations that others took fraudulent actions "at the direction of defendant[]" insufficient to state a claim); *Eclectic Props.*, 751 F.3d at 998.

The Complaint's allegations about Mr. Jacobson also fall short. Ford alleges that he had a "close relationship" with the principal of a business that provides virtual legal staff, but a business relationship with a legitimate entity is not evidence of wrongdoing. Ford also alleges that Mr. Jacobson "falsely represent[ed]" in three declarations that he reviewed and audited billing records, but pleads no facts plausibly supporting that assertion. Compl. ¶ 33. It does not allege, for example, that he directed anyone to reallocate time from non-attorneys to attorneys, or even knew about it. *See Line One Laby's Inc. v. Wingpow Int'l*

*Ltd.*, 2023 WL 6812760, at *10 (C.D. Cal. Sep. 12, 2023) (allegations that defendants "are withholding and concealing property belonging to [plaintiff] that they know has been wrongfully obtained" failed to allege criminal intent); *Safe Health Sys., Inc. v. Chierchio*, 2024 WL 7094192, at *9 (C.D. Cal. Jan. 9, 2024) (similar).

Regardless, even accepting Ford's conclusory assertion about Mr. Jacobson's declarations, failing to review billing records is not the same thing as intentionally making false representations to steal Ford's property. *Siry*, 13 Cal. 5th at 361-62 (criminal intent requires more than allegations of "nonperformance or actual falsity"); *May v. Google LLC*, 2026 WL 788376, at *15 (N.D. Cal. Mar. 20, 2026) (alleging failure to investigate customer reports of fraud did not establish criminal intent under Section 496).

**3. Ford Has Not Plausibly Alleged Reliance**

Ford's claim is premised in part on purported fee demands in settlement negotiations that allegedly induced Ford to settle and pay attorneys' fees. To state such a claim, Ford needed to allege both a specific false representation and a transfer caused by that representation. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1022 (N.D. Cal. 2024). This requires allegations that Ford relied on the misrepresentation. *Galeotti v. Int'l Union of Operating Engr's Loc. No. 3*, 48 Cal. App. 5th 850, 862 (2020). Ford never identifies any misrepresentation made in connection with settlements. *Supra* at 14. But even if it had, Ford has not plausibly alleged reliance on any such statement.

Ford could not justifiably rely on its adversary's representations as a matter of law. *Facebook, Inc. v. ConnectU, Inc.*, 2008 WL 8820476, at *5 (N.D. Cal. June 25, 2008); *see also Scognamillo v. Credit Suisse First Bos. LLC*, 2005 WL 2045807, at *7 (N.D. Cal. Aug. 25, 2005) (reliance on an opposing party's representations during merger negotiations, even if fraudulent, was not justifiable where both parties were represented by counsel); *Borg v. Principal Life Ins. Co.*, 2008 WL 11453724, at *4 (N.D. Cal. July 24,

2008) (similar). And Ford's own conduct shows that it did not actually rely on any of Quill's representations.

For years, Ford has argued in courts that it does not believe Quill's fee petitions accurately reflect the time worked prosecuting claims against Ford. *See supra* at 16-18. Since at least 2023, Ford has asserted that Quill "fabricat[ed]" its billing entries, including by misattributing work done by paralegals and "bots." Ex. 4 at 2, Ford *Tejada* Opp. A party that does not believe a representation cannot and does not rely on it. *Morizur v. Seaworld Parks & Ent., Inc.*, 2020 WL 6044043, at *16 (N.D. Cal. Oct. 13, 2020); *Major v. Ocean Spray Cranberries, Inc.*, 2015 WL 859491, at *3-4 (N.D. Cal. Feb. 26, 2015).

### B. Ford Fails to State a UCL Claim

The Complaint's UCL claim—which is premised on Quill's alleged deceptive advertising to recruit clients, discouraging pre-suit resolution of Lemon Law claims, and the filing of fraudulent fee petitions—fails for three reasons. Ford (i) does not plausibly allege an unlawful, unfair, or fraudulent business practice with the particularity required by Rule 9(b); (ii) lacks standing because it does not allege a qualifying economic injury or causation; and (iii) has an adequate legal remedy for the same alleged conduct.

#### 1. Ford Does Not Plead an Unlawful, Unfair, or Fraudulent Business Practice with Particularity

Because Ford's UCL theories are "grounded in fraud . . . the pleading [of that claim] as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1125 (citation modified). The Complaint does not come close to meeting that standard. Indeed, Ford has argued to the Ninth Circuit that a similar UCL claim against Ford was appropriately dismissed at the pleading stage. Brief of Ford Motor Co., *Kearns v. Ford Motor Co.*, 2008 WL 474745, at *21 (9th Cir. Jan. 16, 2008) ("The complaint's 53 paragraphs of general, vague and conclusory allegations of a conspiracy to defraud consumers do not come close to meeting Rule 9(b)'s requirements.").

*First*, Ford's "unlawful" theory is that Quill filed inflated fee petitions in violation of California Penal Code Section 496 and various other statutes. Compl. ¶ 62. "To be

'unlawful' under the UCL," a business practice must "violate another 'borrowed' law." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (citation omitted). Because Ford's Section 496 claim fails (*see supra* Section II.A.), Ford's derivative UCL unlawfulness claim premised on that statute fails. *See, e.g.*, *Davis*, 691 F.3d at 1168-69; *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018); *Cullen v. Netflix, Inc.*, 2013 WL 140103, at *8 (N.D. Cal. Jan. 10, 2013). The Complaint also alleges in one sentence that Quill's conduct violated Business and Professions Code §§ 6068, 6125, 6126, 6128, and 6400, Civil Code § 1770, the Rules of Professional Conduct, and Penal Code § 118. Compl. ¶ 62. But a conclusory allegation that Quill violated various statutes and rules does not satisfy Rule 9(b). *See Dang v. Samsung Elecs. Co.*, 2018 WL 11348883, at *7 (N.D. Cal. July 2, 2018) ("Plaintiff's one-sentence reference to the statute is simply insufficient to support a UCL unlawful prong claim."); *Silcox v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7335741, at *5 (S.D. Cal. Dec. 22, 2014) (dismissing complaint that lacked "specificity as to how these statutes or code sections are applicable and were allegedly violated").

*Second*, the Complaint's fraudulent practice theory is premised in part on inflated fee entries, but Ford failed to particularize those allegations for the reasons discussed above. *See supra* Section A.1. Ford also alleges that Quill had a fraudulent advertising practice to recruit clients, but never identifies a single advertisement. Compl. ¶ 63. Ford needed particularized facts about the specific advertisements, including what they said, when they were made, who reviewed them, what was misleading, and whether anyone relied on them. *Kearns*, 567 F.3d at 1125-26. The Complaint alleges none of those things. Courts routinely dismiss UCL claims in these circumstances. *See id.* (dismissing UCL deceptive advertising claim against Ford because plaintiff "failed to articulate the who, what, when, where, and how" of the misconduct alleged); *Janney v. Gen. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013) (dismissing UCL claim under fraudulent prong where

plaintiff did not "specify the exact misleading statements"); *Von Koenig v. Snapple Beverage Corp.*, 2011 WL 43577, at *3 (E.D. Cal. Jan. 6, 2011) (similar).

*Finally*, the Complaint's allegations about unfair practices—that Quill discourages consumers from pre-suit resolution of claims for defective vehicles—fail as a matter of law. Compl. ¶ 64. California courts generally apply two tests for unfairness under the UCL: a public policy test and a balancing test. The public policy test requires an unfair practice to be "tethered to some legislatively declared policy" where there is a "close nexus between the challenged act and the legislative policy." *Davis*, 691 F.3d at 1170 (first quote); *Hodsdon*, 891 F.3d at 866 (second quote). Under the balancing test, a court "weigh[s] 'the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Davis*, 691 F.3d at 1169. "A business practice is 'unfair' under this test 'when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Day v. GEICO Cas. Co.*, 2024 WL 1244481, at *8 (N.D. Cal. Mar. 21, 2024) (citation omitted).

The Complaint's allegations fail both tests. Ford offers a conclusory assertion that Quill's conduct conflicts with "[t]he policy animating the Lemon Law," but identifies no Lemon Law provision that is impacted. *Campos v. Bank of Am., Inc.*, 2012 WL 2862603, at *9 (N.D. Cal. July 11, 2012) (allegations that foreclosures and evictions were unfair did not satisfy tethering test "because [plaintiffs did] not state an articulated public policy found in a statute or expressed by an affirmative or specific government enactment"). In fact, the Lemon Law "does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties." *Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App. 4th 294, 302-03 (1995). And under the balancing test, Quill's alleged failure to resolve more cases prior to litigation "is not substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 867.

Ford has not even alleged that a single case Quill filed on behalf of a harmed consumer was meritless.

But even if this type of practice is unfair under the UCL, the Complaint lacks particularized facts that Quill has such a practice. Ford does not identify a single client or a single case impacted by Quill's alleged practices. As Ford itself argued to the Ninth Circuit, these types of conclusory allegations do not come close to satisfying Rule 9(b)—they do not even satisfy Rule 8. Ford Br., *Kearns*, 2008 WL 474745, at *21 ("Peppering the pleading with words such as 'intent,' 'rely,' 'material,' and 'mislead' is not pleading with particularity, but rather asserting legal conclusions, which the Court should disregard."). Here, again, courts routinely dismiss unfair practices claims in similar circumstances. *Kearns*, 567 F.3d at 1127; *May*, 2024 WL 4681604, at *11; *BHRS Grp.*, 553 F. Supp. 3d at 802; *Teton Glob. Invs. LLC v. LC Inv. 2010, LLC*, 2021 WL 5861565, at *3 (S.D. Cal. Aug. 11, 2021).[4]

**2. Ford Lacks Standing Because It Fails to Plausibly Allege Economic Injury or Causation**

The UCL limits standing to plaintiffs who "suffered an injury in fact and ha[ve] lost money or property as a result of" the alleged violation. Cal. Bus. & Prof. Code § 17204. This "requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) (citation omitted). Causation, in turn, requires allegations that a defendant's misrepresentation "'played a substantial part, and so has been a substantial factor' in influencing the plaintiff's actions which, in turn, led to his harm." *May*, 2026 WL 788376, at *18 (citation

[4] To the extent Ford's unfair practices theory is derivative of the unlawful and fraudulent practices theories, it fails for the same reasons those do. Compl. ¶ 64 (citing inflated fee petitions); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (unfair practice claim dismissed where fraudulent and unlawful practices claims dismissed).

omitted). Ford lacks standing because it fails to plausibly allege a cognizable economic injury or causation.

*First*, Ford has not plausibly alleged lost money or property because Quill "interfere[d] with Ford's ability to fulfill its obligations to its customers" or caused "reputational damage." Compl. ¶ 65; *Kwikset*, 51 Cal. 4th at 323. Ford offered no "specific facts showing how [it] was economically injured" in these ways. *Xsolla (USA), Inc. v. Aghanim Inc.*, 2024 WL 4139615, at *12 (C.D. Cal. Sep. 10, 2024) (citation omitted). "A mere conclusory and vague assertion that a plaintiff 'lost money' is insufficient to state a claim." *Id.* (citation omitted).

*Second*, Ford has not plausibly alleged that it incurred legal fees in connection with unnecessary litigations. Compl. ¶ 65. The Complaint does not identify a single case that was "unnecessary." And even if it had, Ford cannot establish causation because it does not allege that it would have repurchased those vehicles or that the vehicles at issue in those cases were not actually defective. Thus, the Complaint does not show a causal link between Ford incurring legal fees and Quill's alleged conduct. *See Mayron v. Google LLC*, 54 Cal. App. 5th 566, 575 (2020) ("Whether a loss was caused by the defendant is what matters for standing, not any resulting consequence imposed by statute.").

*Finally*, Ford has not plausibly alleged that it relied on any purported misrepresentations that resulted in the payment of Quill's legal fees. As explained above, Ford does not particularize allegations that Quill misrepresented its fee entries. Even if it had, Ford could not and did not rely on those representations. *See supra* at 20-21; *see also Mayron*, 54 Cal. App. 5th at 575*; Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal. 2014) (no UCL standing on either a misrepresentation or omission theory where plaintiff did not allege that defendant had "exclusive knowledge of material facts not known or reasonably accessible to" plaintiff prior to purchase (citation omitted)). And Ford does not attempt to allege that it relied on Quill's alleged "deceptive advertising"

before taking any action, or that it would have acted any differently in its interactions with Quill's clients because of them. *See* Compl. ¶¶ 17, 24, 63.

**3. Ford Has Adequate Remedies at Law**

The UCL provides only for equitable relief. *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 155 (2015). Ford is not entitled to equitable remedies because it has failed to plead that it lacks an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Ford offers a conclusory assertion that "it has no adequate remedy at law" to stop Quill from discouraging pre-suit resolution of cases, but Ford acknowledges just one sentence later that it has brought these issues to the courts overseeing the underlying Lemon Law actions. Compl. ¶ 67. Ford's displeasure with how courts have ruled does not create an equitable remedy where none exists. The same is true for Ford's claimed harm from alleged inflated fee petitions, which Ford can and has challenged in the underlying Lemon Law cases.

Ford also has asserted a theft claim premised on inflated fee petitions, underscoring that it has an adequate remedy at law. *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) (dismissing UCL claim when the adequate remedy at law ultimately failed); *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1193 (S.D. Cal. 2023) (similar).[5]

**C. Ford's Complaint Underscores the Importance of Rule 9(b)**

Ford's pleading failures underscore why complying with Rule 9(b) is so important. Rule 9(b)'s heightened pleading standard serves three purposes: (i) providing defendants with adequate notice to defend the charge and deter plaintiffs from filing complaints as a pretext for discovery of unknown wrongs, (ii) protecting those whose reputation would be harmed by being subject to fraud charges, and (iii) "prohibit[ing] plaintiffs from

---

[5] Ford's claims are also substantially time-barred. Any UCL claim accruing before June 18, 2022, any theft claim accruing before June 18, 2023, and any theft claim for treble damages accruing before June 18, 2025, are all barred. *See* Cal. Bus. & Prof. Code § 17208; Cal. Civ. Proc. Code § 338(d); *Tu Le v. Prestige Cmty. Credit Union*, 2023 WL 9689133, at *9 (C.D. Cal. Nov. 6, 2023).

unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Kearns*, 567 F.3d at 1125. All are implicated here.

*First*, the Complaint provides Quill virtually no notice of what clients, cases, advertisements, or settlements are at issue, what representations Quill's clients purportedly made to Ford, what misrepresentations Quill purportedly made in fee demands, what fee entries were purportedly misstated, who made them, and when. Quill cannot prepare its defense in these circumstances, and there is no excuse for Ford's lack of particularity. Ford knows the contents of its communications with consumers, what cases it settled with Quill and the representations made in connection with them, and the contents of Quill's filed fee petitions. It simply chose not to identify them. *See Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 978 (N.D. Cal. 2019).

The rare times Ford attempted (but failed) to particularize its allegations reinforce why doing so is critical to Quill's ability to prepare a defense. Because Ford identified three specific cases with purportedly inflated fee entries, Quill was able to argue that those cases are subject to issue preclusion. *See supra* at 16-18. The same is likely true of Ford's accusation that Quill frustrates Ford's ability to repurchase vehicles. Ford has been making that accusation against Quill in Lemon Law cases too. *See* Ex. 5A (Ford's Mot. for Summary Judgment, *Arizmendi v. Ford*, Case No. 25CU037566C (Cal. Super. Ct. Jan. 22, 2026) (accusing Quill of "encouraging its clients to make it impossible for Ford to" effectuate repurchase)); Ex. 5B (Minute Order on Defendant's Motion for Summary Judgment, *Arizmendi v. Ford*, Case No. 25CU037566C (Cal. Super. Ct.) Aug. 7, 2026) (noting that the "facts do not indicate that Plaintiff engaged in acts which intentionally frustrated the repurchase process")).

*Second*, Quill is being dragged through the mud based on hyperbolic and conclusory allegations of fraud. In fact, Ford has gone out of its way to allege that Quill is harming ***its own clients*** without any particularity whatsoever. Compl. ¶ 23. Ford's alleged $25 million damages figure is likewise based on the conclusory assertion that "no less than fifty percent of the [$50 million] fees Ford has paid were fraudulently and illegally obtained." Compl.

¶ 5. Ford provides no basis for its assertions that ***half*** of Quill's court-awarded attorneys' fees were "illegally obtained" or that Ford purportedly paid Quill $50 million in attorneys' fees. *Id.* Ford's apparent purpose is to harm Quill's business and deter consumers from using Quill for legal services in the future. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ("Rule 9(b) . . . safeguards a 'defendant's reputation and goodwill from improvident charges of wrongdoing.'" (citation omitted)).

*Finally*, this is the paradigmatic case that should be dismissed at the pleading stage so that Ford does not impose enormous costs on the court and Quill. Ford is seeking to ***relitigate*** what happened in hundreds or thousands of Lemon Law litigations going back over five years. Because so many of Ford's allegations implicate privilege issues, discovery would be complicated, burdensome, and costly. There is no good reason to proceed with this case on this Complaint. *See People ex rel. Heryford v. All. Data Sys. Corp.*, 2018 WL 3197856, at *2 (E.D. Cal. June 26, 2018) (dismissing complaint as a "fishing expedition for the 'discovery of unknown wrongs' of the precise sort that Rule 9(b) is designed to smoke out" (citation omitted)).

## III. FORD'S CLAIMS MUST BE STRICKEN UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

Ford's claims also must be stricken under California's anti-SLAPP statute, which protects a "defendant's right to free speech." *Sarver*, 813 F.3d at 901 (citation omitted); Cal. Civ. Proc. Code § 425.16(e). The moving party must first make a "threshold showing that the challenged cause of action arises from protected activity." *Rusheen*, 37 Cal. 4th at 1056; Cal. Civ. Proc. Code § 425.16(b)(1). Then, the court must determine whether the plaintiff has shown a probability of prevailing on its claim(s). *Rusheen*, 37 Cal. 4th at 1056. Quill's motion succeeds at both steps.

### A. Ford's Claims Arise from Protected Conduct

As outlined above, Ford's claims all arise out of Quill's litigation conduct. Ford alleges that Quill recruited clients to bring litigation against Ford, caused clients to send demand letters and emails intended to generate Lemon Law claims; filed complaints;

engaged in discovery; made fee demands; settled cases; and filed fee petitions seeking attorneys' fees. *Supra* Section I.B.; Cal. Civ. Proc. Code § 425.16(e)(4). Courts routinely hold that the anti-SLAPP statute applies to this type of conduct. *See Ramirez v. McCormack*, 113 Cal. App. 5th 493, 500 (2025); *Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 113 (2017) (anti-SLAPP protections apply to "lawyers and law firms engaged in litigation-related activity"); *Rusheen*, 37 Cal. 4th at 1056 (protections apply to "communicative conduct such as the filing, funding, and prosecution of a civil action"); *Rubin v. Green*, 4 Cal. 4th at 1196-97 (protections apply to "*soliciting* others to file what are, to all appearances, potentially *meritorious* claims"); *Action Apartment Ass'n*, 41 Cal. 4th at 1248 (protections apply to "attorney prelitigation solicitations of potential clients and subsequent filing of pleadings in the litigation").

Ford cannot avoid the anti-SLAPP statute by characterizing Quill's conduct as fraudulent or unlawful. The question is whether the acts underlying the claims are protected, "not whether [Quill] has shown its acts are ultimately lawful." *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 888 (2019). California courts routinely hold that litigation conduct is protected *even if* it is alleged to have been wrongful, false, unethical, or illegal. *See Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1024-25 (2021) (settlement negotiations protected despite allegations of fraud); *Crossroads Invs. L.P. v. Fed. Nat'l Mortg. Ass'n*, 13 Cal. App. 5th 757, 778-79 (2017) (similar); *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 210 (2015) ("this determination is a very easy one"; dismissing claims against lawyers, where "the acts alleged in the complaint all arise out of defendants' representation of their clients in the underlying case").

### B. Ford Cannot Show a Likelihood of Prevailing on Its Claims

Ford cannot meet its burden to show a probability of success. As detailed above, the entire Complaint is barred by California's litigation privilege and the *Noerr-Pennington* doctrine, and Ford has otherwise failed to state claims for theft or under the UCL. Where a defendant prevails on an anti-SLAPP motion, an award of attorneys' fees and costs is mandatory. Cal. Civ. Proc. Code § 425.16(c); *569 E. Cnty. Blvd. LLC v. Backcountry*

*Against the Dump, Inc.*, 6 Cal. App. 5th 426, 432 (2016). Thus, this Court's order should reflect that Quill is entitled to its attorneys' fees and costs, as determined through subsequent proceedings.

## CONCLUSION

Based on the foregoing, the Court should dismiss and strike Ford's Complaint. Because amendment would be futile given the threshold California litigation privilege and *Noerr-Pennington* immunity from suit and other fundamental defects in Ford's claims, the Complaint should be dismissed with prejudice. *See, e.g.*, *Litrinium, Inc. v. MACOM Tech. Sols. Inc.,* 2020 WL 4580506, at *8 (C.D. Cal. Apr. 27, 2020); *Quaid v. Granet*, 2026 WL 1329648, at *1 (9th Cir. May 13, 2026).

DATED: August 17, 2026

**MILBANK LLP**

By: */s/ Neal K. Katyal*

Neal K. Katyal
Matthew Laroche
Samir L. Vora
Lucille Baeurle
Alexander Ruppert

**LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Defendant Quill & Arrow LLP, certifies that this brief complies with the page limit set by the Court in its order dated August 14, 2026. *See* Dkt. No. 25.

DATED: August 17, 2026 *<u>/s/ Neal K. Katyal</u>*